UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

STEPFON SMITH,

    Plaintiff,

v.                                          Case No. 3:22cv7781-LC-HTC

STATE OF FLORIDA,

    Defendant.

_____/

REPORT AND RECOMMENDATION

Plaintiff initiated this case by submitting a document titled "suicidal letter" and "writ habeas corpus motion"; it alleges Plaintiff is having suicidal thoughts at Santa Rosa Correctional Institution but being denied inpatient treatment or placement in self-harm observation status ("SHOS"). ECF Doc. 1. Due to the nature of the allegations, the Court construed the document as a motion for preliminary injunction and directed the Defendant to respond. ECF Doc. 3. After reviewing Defendant's response and the attached declaration, ECF Docs. 7, 7-1, the undersigned concludes the motion should be denied because Plaintiff has not shown a substantial likelihood of success on the merits.

"A party seeking a preliminary injunction must establish that (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs

whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Vital Pharms., Inc. v. Alfieri*, 23 F.4th 1282, 1290-91 (11th Cir. 2022) (quotation marks and citation omitted). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." *Id.* at 1291 (citation omitted).

Thus, for the Court to grant Plaintiff's motion, he must establish a substantial likelihood of success on the merits of his Eighth Amendment claim. An Eighth Amendment claim requires, in part, proof that a prison official acted with deliberate indifference. *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1270 (11th Cir. 2020). To establish deliberate indifference, a plaintiff must demonstrate prison officials: (1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) acted with more than gross negligence. *Id.*

Putting aside the fact Plaintiff has yet to file a complaint in this case, his motion does not contain allegations sufficient to state a claim for relief. It alleges Plaintiff is suicidal and asked for help from three individuals, but it does not describe their response to his requests. Similarly, Plaintiff claims he has been denied inpatient treatment or placement on SHOS, but he does not specify whether he is receiving other forms of treatment.

Moreover, Defendant's response includes evidence indicating Plaintiff is receiving attention and treatment that does not violate the Eighth Amendment. Suzonne Kline, Psy. D., the Chief of Mental Health Services for the Florida Department of Corrections ("FDOC") reviewed Plaintiff's medical records and submitted a declaration describing his mental health treatment from March 20, 2022, to July 1, 2022. ECF Doc. 7-1. Dr. Kline's declaration reveals the following.

On March 20, 2022, Plaintiff threatened self-harm; medical staff transferred him to SHOS until a "psyche provider" could evaluate him and determine he was not at risk of imminent self-harm. *Id.* at ¶ 4. When mental health staff saw Plaintiff on March 21, he talked about "after death" plans, do not resuscitate requests, and stated, "I want to die slow." *Id.* at ¶ 5. Plaintiff also stated, "I tried to hang myself with my boxers, then climbed on my bed and jumped headfirst," which prompted staff to continue SHOS and daily counseling until he could be seen by the attending psyche provider. *Id.* Between March 22 and March 29, Plaintiff was seen by various mental health and psychiatric providers; he complained of suicidal ideation and reported multiple suicide attempts. *Id.* at ¶ 6. Noting Plaintiff's "significant risk of suicide with active ideation, plans and intent to do harm," the providers ordered Plaintiff to continue SHOS and receive daily counseling. *Id.*

On March 29, staff evaluated Plaintiff and reported:

[Plaintiff] no longer endorses suicidal ideation and has denied since [March 25] . . . [Plaintiff] is no longer in crisis and reports no SI/HI,

psychosis, or debilitating mental illness that requires further SHOS or inpatient care. Practitioner and clinician believe [Plaintiff] can now function in [close management ("CM")] environment.

*Id.* at ¶ 7. Plaintiff was transferred from SHOS to CM the next day. *Id.* at ¶ 8.

On April 7, Plaintiff refused his daily mental health services, and declined to leave his cell or sign a refusal form. *Id.* at ¶ 9. Records indicate he was at low risk for self-harm and "engaging in self-harming behaviors and contrived symptomology to affect a change in his environment." *Id.* Records from April 11 show staff evaluated Plaintiff and noted he "continues to feign psychosis to re-enter inpatient care and avoid CM . . . has refused 8 meals." *Id.* at ¶ 10. Nevertheless, Plaintiff returned to SHOS so staff could monitor his food consumption, though they noted he demonstrated "no mental health distress or symptoms." *Id.*

Plaintiff was discharged from SHOS on April 14 after an assessment found he was attempting to "misuse policy and procedure to avoid CM." *Id.* at ¶ 11. He refused mental health services on April 22. *Id.* On May 12, staff noted Plaintiff showed "signs of mild to moderate mental or emotional impairment which can be managed on an outpatient basis." *Id.* at ¶ 12. Plaintiff refused mental health counseling on May 23; the next day, he "denied going on a 'hunger strike' claiming food allergy, and personally requested to change his psych grade, wanting to 'drop all mental health.'" *Id.* at ¶ 13. He refused mental health services again on May 31. *Id.* at ¶ 14.

Case No. 3:22cv7781-LC-HTC

On June 1, staff conducted a well-being check after prison officials received a phone call indicating Plaintiff had written the caller a letter containing suicidal statements. *Id.* at ¶ 15. Plaintiff "denied, appeared oriented and in good health." *Id.* Staff visited Plaintiff's cell on June 3 "following suicidal ideation and mentions of a hunger strike"; Plaintiff refused to speak, shaking his head to all questions asked, but staff reviewed his records and noted he had not missed any meals. *Id.* at ¶ 16. On June 7, Plaintiff "refused to discuss anything other than his psych grade and how he wants it dropped . . . was not the one writing letters about suicidal intent . . . refused to be redirected and was upset he was not being allowed to sign a DNR." *Id.* at ¶ 17.

On June 10, a well-being check was conducted following another letter written about suicidal ideation. *Id.* at ¶ 18. Plaintiff denied writing any letters or having self-injurious thoughts and did not appear to be in crisis. *Id.* He refused mental health services on June 14 and declined to sign a refusal form. *Id.* at ¶ 19. An emergency mental health evaluation conducted on June 16 showed discrepancies between reported symptoms and clinical observations, including "no physical symptoms of sleep deprivation, reactions to or descriptions of, any hallucinating or visions." *Id.* at ¶ 20. Staff concluded Plaintiff was "exaggerating symptomology to move to [a] different care setting." *Id.* Plaintiff refused mental health services again on June 21. *Id.* at ¶ 21.

On June 29, Plaintiff refused a request to submit to restraints in advance of a crisis team intervention and cell search; the "CIT was unsuccessful," and Plaintiff "would be returned to security accordingly." *Id.* at ¶ 22. He was not seen for his regularly scheduled mental health callout the following day due to security issues; he was placed on property restriction due to his behavior and refusal to submit to restraints the previous day. *Id.* at ¶ 23. On July 1, staff observed no behaviors or statements by Plaintiff indicating a need for an increased level of care. *Id.* at ¶ 24.

Based on the foregoing, Plaintiff has not established a substantial likelihood of success on the merits.[1] He has not filed a complaint and his motion does not contain allegations which state an Eighth Amendment claim. In addition, the evidence provided by the FDOC shows Plaintiff's mental health is being monitored and treated on a regular basis, which indicates prison officials are not recklessly disregarding a known risk of serious harm. And Plaintiff's request for inpatient treatment or placement in SHOS, which mental health staff believes is motivated by a desire to avoid CM, merely represents a disagreement as to the course of his treatment, which is not sufficient to establish an Eighth Amendment violation. *See Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) ("Nor does a simple

---

[1] Because Plaintiff has failed to establish the first element required for a preliminary injunction, the Court need not address the other three elements. *See Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) ("The failure to establish any element . . . renders a preliminary injunction inappropriate.") (quotation marks and citation omitted).

difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment.") (citation omitted).

Accordingly, it is RECOMMENDED:

That Plaintiff's motion for preliminary injunction, ECF Doc. 1, be DENIED.

At Pensacola, Florida, this 22nd day of July, 2022.

/s/ Hope Thai Cannon
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.